STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
THOMAS E. LOESER (SBN 202724)
toml@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

DANIEL ALBERSTONE (SBN 105275)
dalberstone@baronbudd.com
ROLAND TELLIS (SBN 186269)
rtellis@baronbudd.com
MARK PIFKO (SBN 228412)
mpifko@baronbudd.com
EVAN ZUCKER (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

*Attorneys for Plaintiffs and the Proposed Class*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH WILLIAMS, BECKIE REASTER, REBECCA MURPHY, individually, and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>   v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, a New York corporation, COUNTRYWIDE BANK, N.A., a national association, BANK OF AMERICA CORPORATION, a Delaware corporation, LANDSAFE, INC., a Delaware corporation, LANDSAFE APPRAISAL, INC., a California corporation,<br><br>                     Defendants. | No. 2:16-cv-4166-CAS (AGR)<br><br>(Consolidated with Case No. 2:13-cv-13-08833-CAS-AGR)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  March 13, 2017<br>Time:  10:00 a.m.<br>Place:  Courtroom 8D<br>Judge: Hon. Christina A. Snyder |

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
010606-12 929408 v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................... 1

II.     SUMMARY OF ALLEGATIONS .................................................... 2

III.    STANDARD OF REVIEW .................................................................. 4

IV.     ARGUMENT ..................................................................................... 4

        A.      Plaintiffs' Claims Are Timely ................................................ 4

                1.      The Discovery Rule Preserves Plaintiffs' Claims ........................... 5

                2.      The Doctrine of Fraudulent Concealment Also Preserves
                        Plaintiffs' Claims ................................................................ 6

                3.      Defendants' "Due Diligence" Argument Has Already
                        Been Rejected by This Court .......................................... 9

        B.      Plaintiffs Adequately Allege Their Claims Under RICO, the
                FDUTPA, and the UCL ................................................... 10

        C.      Defendants' Argument That Plaintiffs' UCL Claims Should Be
                Dismissed Due to a Lack of Reliance Fails for the Same Reason
                their RICO Reliance Argument Fails ...................................... 14

        D.      Defendants' Arguments that Plaintiffs' FDUTPA Claim Should
                Be Dismissed Due to a Lack of Reliance Fail for the Same
                Reason Their RICO and UCL Reliance Arguments Fail ..................... 15

V.      CONCLUSION .............................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) .................................................................. 11

*American Pipe and Construction Co., et. al. v. State of Utah, et. al.*,
   414 U.S. 538 (1973) ...................................................................................................... 8

*Anderson v. Franklin*,
   2010 WL 742765 (E.D. Mich. Feb. 26, 2010) ................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 4

*Bridge v. Phoenix Bond & Indem. Co.* ("*Phoenix Bond & Indem. Co.*"),
   553 U.S. 639 (2008) .............................................................................................. 11, 12

*Burr v. Philip Morris USA Inc.*,
   2012 U.S. Dist. LEXIS 159084 (M.D. Fla. Sept. 28, 2012) .......................... 7

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ............................................................................... 16

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
   858 F.2d 499 (9th Cir. 1988) .................................................................................... 7

*El Pollo Loco, Inc. v. Hashim*,
   316 F.3d 1032 (9th Cir. 2003) ................................................................................. 6

*Fitzpatrick v. Gen. Mills, Inc.*,
   635 F.3d 1279 (11th Cir. 2011) ............................................................................ 16

*Graham v. Bank of America, N.A.*,
   226 Cal. App. 4th 594 (2014) .................................................................... 9, 13, 17

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006) .................................................................................... 7

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) ...................................................................15

*Hennegan Co. v. Arriola*,
    855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...................................................16

*Hobart v. Hobart Estate Co.*,
    26 Cal. 2d 412 (1945) ..........................................................................9, 10

*In re Actimmune Mktg. Litig.*,
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ..................................................12

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) .......................................................7

*Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*,
    724 F. Supp. 2d 1228 (S.D. Fla. 2010) ...................................................17

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ....................................................................4

*Licul v. Volkswagen Grp. of Am.*,
    2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ..........................7

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...................................................16

*Martorella v. Deutsche Bank Nat'l Trust Co.*,
    161 F. Supp. 3d 1209 (S.D. Fla. 2015) *adhered to on reconsideration*,
    2015 U.S. Dist. LEXIS 178137 (S.D. Fla. Nov. 9, 2015) .......................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..................................................................4

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) ..............................................................................6

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ....................................................................4

*Raie v. Cheminova, Inc.*,
    336 F.3d 1278 (11th Cir. 2003) ..............................................................12

*Rollins, Inc. v. Butland,*
   951 So. 2d 860 (Fla. Dist. Ct. App. 2006).............................................................17

*Rutledge v. Boston Woven Hose & Rubber Co.,*
   576 F.2d 248 (9th Cir. 1978)...................................................................................7

*Santa Maria v. Pac. Bell,*
   202 F.3d 1170 (9th Cir. 2000)................................................................................7

*Simmons v. United States,*
   805 F.2d 1363 (9th Cir. 1986)..............................................................................10

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,*
   427 F. App'x 714 (11th Cir. 2011), *rev'd in part sub nom. State Farm*
   *Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014).....................17

*Vaccarino v. Midland Nat'l Life Ins.,*
   2012 U.S. Dist. LEXIS 52499 (C.D. Cal. Apr. 13, 2012).....................................6

*Waldrup v. Countrywide Financial Corp., et. al.* ("*Waldrup*"),
   No. 2:13-cv-08833-CAS-AGR (C.D. Cal.)....................................................*passim*

*W.S. Badcock Corp. v. Myers,*
   696 So.2 d 776 (Fla. Dist. Ct. App. 1996)...........................................................17

*Zixiang Li v. Kerry,*
   710 F.3d 995 (9th Cir. 2013)..................................................................................4

**STATUTES**

12 U.S.C. §§ 2607...................................................................................................5

Cal. Bus. & Prof. Code §17200 *et seq.*.................................................................14

Cal. Civ. Code § 1090.5.................................................................................*passim*

Fla. Stat. § 501.203(8)..........................................................................................17

Fla. Stat. § 501.212...................................................................................15, 16, 17

# I.    INTRODUCTION

For most Americans, a home purchase or refinancing is the single largest transaction that they will ever undertake.  In fact, a well-informed and thoughtful home financing transaction can lead to a lifetime of financial wellbeing, while an ill-advised transaction can quickly lead to financial ruin.  This is why financial services companies, such as Defendants, must act with integrity and be actuated by good faith when providing transaction-critical information, such as a home appraisal.  This case arises because Countrywide and LandSafe broke this most basic rule.  They promised borrowers appraisals that complied with applicable regulations, and charged hundreds of dollars for them.  But they provided appraisals that were pre-textual and failed to comply with applicable regulations.  Through this lawsuit, borrowers simply seek a refund of the moneys they spent for the appraisals that were not as promised.

This case is part of a consolidated action, which along with the earlier filed *Barbara Waldrup v. Countrywide Financial Corp., et. al.* ("*Waldrup*") action, seeks to recover monies paid by homeowners for unlawfully prepared appraisals.[1]  The *Waldrup* action was filed in 2013 and after asserting successive challenges to the pleadings, none of which resulted in a broad dismissal, Defendants filed an answer.  Now, with a related case on file, and apparently hoping to get a second bite at the apple, Defendants again move to dismiss.  But Defendants' current motion essentially repackages arguments which were already rejected by this Court in the *Waldrup* action.  Moreover, the underlying facts were vetted through the successful Lagow and Madsen *qui tam* actions, which first brought Defendants' fraudulent appraisal practices to light and resulted in Defendants' payment of over $400 million dollars to the federal government.  Under the circumstances, Defendants cannot legitimately contend that the claims in this case suffer from any deficiencies or that they are not on notice of the nature of the charges against them.

---

[1] No. 2:13-cv-08833-CAS-AGR (C.D. Cal.).

With respect to Defendants' challenges to Plaintiffs' RICO, FDUTPA, and UCL claims, all of the issues raised were previously argued in *Waldrup* and rejected by this Court.[2]  Nevertheless, Defendants again argue that Plaintiffs' claims are untimely. Then, Defendants reargue that Plaintiffs insufficiently allege reliance and proximate cause because the appraisals at issue purportedly are for the benefit of the lender.[3]  But this argument fails now for the same reasons it failed in *Waldrup*.

Finally, Defendants brazenly assert that borrowers cannot seek damages for amounts they paid for appraisals, even if those appraisals were a sham and did not comply with the requisite standards for an appraisal.  At bottom, Defendants essentially argue that even if in exchange for borrowers' payments, they provided nothing more than a piece of paper that says "appraisal," without a legitimate valuation opinion, they would be immune from liability for the amounts paid for those "appraisals."  Taken to its logical conclusion, Defendants' position is absurd and, just as in the *Waldrup* action, it must be rejected by this Court.

## II.    SUMMARY OF ALLEGATIONS

"During the period 2003 to 2008, Countrywide became the largest home mortgage lender in the United States, having originated over $400 billion in loans each year."[4]  As federally insured and regulated financial institutions, Defendants were required to "perform real estate appraisals in accordance with the strict ethical and competency rules of the Uniform Standards of Professional Appraisal Practice ('USPAP')."[5]  "Recognizing that it needed to close as many loans as possible to maintain its hefty profit margins, Countrywide began removing the 'toll gates' that slowed or obstructed the loan origination process.  One of those 'toll gates' was the

---

[2] *See* Civil Minutes (order denying Defendants' Motion to Dismiss Plaintiff Waldrup's Third Amended Complaint), *Waldrup,* ECF No. 52.

[3] Mtn. to Dismiss at 2.

[4] Complaint, ECF No. 1 ("Compl.") ¶ 2.

[5] *Id*. ¶ 1.

ever important appraisal."[6]  Implicit in the safeguards of the mortgage process is the appraisal, "Title XI of the Financial Institutions Reform Act of 1989 ('FIRREA') *requires* financial institutions like Countrywide and BofA to obtain regulated appraisals, performed in strict compliance with USPAP's ethical and competency requirements."[7]

In an effort to remove the delay sometimes associated with appraisals, Defendants "operated an illegal enterprise whose purpose was, in part, to have homeowners pay for an appraisal which was performed with indifference to the appraisal's accuracy and/or was not in fact a USPAP compliant appraisal, and instead was a phony appraisal used to facilitate the sale of a home financed by a Countrywide loan."[8]  Plaintiffs allege that "Countrywide and LandSafe agreed to knowingly, fraudulently, systematically and uniformly produce phony so-called USPAP 'appraisals' on home loans originated by Countrywide."[9]

Making matters worse for Plaintiffs and class members, Defendants "required borrowers to *pay* between $300 and $600 for these so-called 'appraisals.'"[10]  "In the end, . . . Countrywide charged borrowers hundreds of millions of dollars for legally-mandated USPAP appraisals that were never performed."[11]  In fact, Plaintiff Williams paid $515, Plaintiff Reaster paid $400, and Plaintiff Murphy paid $410 for their fraudulent appraisals.[12]  Had Plaintiffs and members of the class known that

---

[6] *Id.* ¶ 3.

[7] *Id.* ¶ 4.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 8.

[10] *Id.* ¶ 11.

[11] *Id.*

[12] *Id.* ¶¶ 76, 88, 101.

PLAINTIFFS' OPPOSITION TO          - 3 -
DEFENDANTS' MOTION TO DISMISS
010606-12 929408 v1

Defendants systematically corrupted the appraisal process and performed pre-textual appraisals, they would not have paid for them.[13]

## III.   STANDARD OF REVIEW

A complaint is sufficient if it adequately puts the defendant on notice of the claims being brought against him.[14]  While a motion to dismiss under Rule 12 tests the legal sufficiency of a complaint, the complaint does not need detailed factual allegations to survive such a motion.[15]  A plaintiff is merely obligated to provide the grounds upon which he alleges that he is entitled to relief.[16]  The court must accept as true the factual allegations stated in plaintiff's complaint as well as reasonable inferences drawn therefrom.[17]  And, while the court has authority to determine if the allegations are tenable, the court must ultimately "determin[e] whether a complaint states a plausible claim for relief . . . , [and this is a] context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18]  Accordingly, the Ninth Circuit has made clear that "dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."[19]

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Are Timely

Defendants' attempt to characterize Plaintiffs' claims as untimely represents a baseless effort to reopen an issue that this Court definitively ruled on almost three

---

[13] *Id.* ¶¶ 76, 88, 98.

[14] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16] *Id.*

[17] *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[19] *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

years ago.  In *Waldrup*, Defendants tried to assert that plaintiff's action was time-barred since her complaint was filed six-and-a-half years after her last appraisal.[20] "The Court [found] this argument unpersuasive" and was unwilling "to find as a matter of law that plaintiff cannot avail herself of either the discovery rule or the doctrine of fraudulent concealment."[21]  Instead of presenting significant new case law or legal analysis to address the discovery rule or the doctrine of fraudulent concealment, Defendants apply the same mechanical arithmetic that was so "unpersuasive" in *Waldrup* to argue that all of Plaintiffs' claims expired by November, 2011.  Again, Defendants are wrong.  The allegations of the Complaint clearly demonstrate that Plaintiffs' claims are preserved by the discovery rule and the doctrine of fraudulent concealment.[22]

### 1.    The Discovery Rule Preserves Plaintiffs' Claims

As they did in their motion to dismiss in *Waldrup*, Defendants entirely ignore the discovery rule here.[23]  However, the discovery rule is an integral factor in determining when the statute of limitations begins to run.  Under California law, accrual of a cause of action, and the triggering of the statute of limitations, generally begins "when, under the substantive law, the wrongful act is done, or the wrongful

---

[20] Defendants' Motion to Dismiss Plaintiff Waldrup's Complaint, *Waldrup,* ECF No. 14, at 6:3-20.

[21] *See* Civil Minutes, *Waldrup,* ECF No. 22, at 7-8.

[22] Plaintiffs note that, in their Motion, Defendants argue that Plaintiffs' Third Claim for Relief: Violations of the Real Estate Settlement Procedures Act (12 U.S.C. §§ 2607) is untimely. However, the parties have already jointly stipulated to dismiss Plaintiffs' RESPA claim.  *See generally* Parties' Joint Stipulation for Dismissal of Third Claim for Relief: Violations of the Real Estate Settlement Procedures Act (12 U.S.C. §§ 2607), ECF No. 40. Thus, Plaintiffs do not address Defendants' arguments on the RESPA claim in this Opposition.

[23] *Compare Waldrup,* ECF No. 14 at 6:3-8:17 *with* Mtn. to Dismiss at 8:7-11:15.

result occurs, and the consequent liability arises."[24]  The discovery rule, however, "postpones accrual . . . until the plaintiff discovers, or has reason to discover, the cause of action."[25]  "The discovery rule ameliorates the harshness of the general rule 'in some cases . . . where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured."[26]

As this Court has held, a plaintiff who intends to rely on the discovery rule to toll the orthodox limitation period "must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."[27]  Plaintiffs have done so here.  First, the Complaint alleges that Plaintiffs only learned of Defendants' appraisal scheme when the Lagow complaint was unsealed in May 13, 2012.[28]  Plaintiffs allege that they could not have discovered that their appraisals were fraudulent when they received them in 2006 and 2007.[29]  Moreover, Plaintiffs were "unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part."[30]  Thus, the statute of limitations could not have started to run in 2006 and 2007 as Defendants claim.[31]

### 2.   The Doctrine of Fraudulent Concealment Also Preserves Plaintiffs' Claims

"Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the

---

[24] *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).

[25] *Id.*

[26] *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (citation omitted).

[27] *See Vaccarino v. Midland Nat'l Life Ins.*, 2012 U.S. Dist. LEXIS 52499, at *13 (C.D. Cal. Apr. 13, 2012) (citation omitted).

[28] *See* Compl. ¶¶ 111, 113.

[29] *See id.* ¶¶ 75, 87, 100, 113.

[30] *Id.* ¶ 113.

[31] Mtn. to Dismiss at 8:7-9:13.

---

wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'"[32]  "To successfully plead fraudulent concealment, Plaintiffs must 'plead facts showing that [Defendants actively misled them], that [they] had neither actual nor constructive knowledge of the facts constituting [their] claim for relief despite [their] diligence in trying to discover the pertinent facts.'"[33]  Similarly, under Florida law, to toll the statute of limitations as a result of fraudulent concealment, a plaintiff "must allege . . . (1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim."[34]  "The 'fraudulent means' alleged must go beyond mere non-disclosure, and must constitute active and willful concealment."[35]  "The requirement of diligence is only meaningful, however, when facts exist that would excite the inquiry of a reasonable person."[36]

Plaintiffs allege that Defendants made deliberate efforts to conceal their fraudulent appraisal scheme from Plaintiffs.[37]  Plaintiffs allege that Lagow's complaint detailed how Defendants "knowingly and fraudulently" perpetrated the appraisal

---

[32] *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)).

[33] *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 787-88 (N.D. Cal. 2007) (citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)).

[34] *Licul v. Volkswagen Grp. of Am.*, 2013 U.S. Dist. LEXIS 171627, at *16 (S.D. Fla. Dec. 5, 2013) (citing *Burr v. Philip Morris USA Inc.*, 2012 U.S. Dist. LEXIS 159084, at *10-11 (M.D. Fla. Sept. 28, 2012)).

[35] *Id.* (citing *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)).

[36] *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d at 788 (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988)).

[37] Compl. ¶¶ 56-63, 75, 87, 100, 107, 111.

scheme.[38]  Plaintiffs allege that only through the unsealing of the Lagow complaint on May 13, 2012, did they learn the extent of Defendants' appraisal scheme.[39]  Plaintiffs allege that they "were . . . unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part."[40]  Further, Plaintiffs allege that they "were not on inquiry notice of Defendants' wrongdoing . . . because the charges on their HUD-1 Settlement Statements appeared to be legitimate."[41]  In addition, Plaintiffs allege that "[e]ven assuming there had been some indication of wrongdoing (which there was not), and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the [scheme]."[42]  Such allegations satisfy the application of the fraudulent concealment doctrine.

Finally, as detailed in the Complaint, this action was filed against the same Defendants and with the same proposed class as the related *Waldrup* matter, which was timely filed on November 27, 2013.[43]  As a result, the running of the limitations period on Plaintiffs' claims has been tolled pursuant to the Supreme Court's holding in *American Pipe and Construction Co., et. al. v. State of Utah, et. al.* and has yet to resume.[44]  While Defendants claim that equity does not support tolling, they provide no evidence demonstrating how they would be prejudiced by this Court allowing Plaintiffs to bring their claims.  Accordingly, Defendants' equity argument falls flat.

---

[38] *Id.* ¶¶ 55-57.

[39] *See id.* ¶ 111.

[40] *Id.* ¶ 113.

[41] *Id.*

[42] *Id.* ¶ 114; *see also id.* ¶ 115.

[43] *Id.* ¶ 112.

[44] *Id.* (citing 414 U.S. 538 (1973)).

PLAINTIFFS' OPPOSITION TO                    - 8 -
DEFENDANTS' MOTION TO DISMISS
010606-12 929408 v1

### 3.    Defendants' "Due Diligence" Argument Has Already Been Rejected by This Court

As they did unsuccessfully in *Waldrup*, Defendants again argue that equitable tolling does not apply because Plaintiffs fail to allege any due diligence to investigate their injury.[45]  Defendants' newly found reliance on *Graham v. Bank of America, N.A.* does nothing to help their argument.[46]  Even if "[p]laintiff [is] in as good a position as . . . defendant to know the value . . . of the property,"[47] a plaintiff is in a far inferior position than a defendant to know whether that defendant is engaged in a systematic practice of corrupting the appraisal process.  Moreover, Defendants offer no explanation for why Plaintiffs should have been suspicious enough to investigate Defendants prior to the publication of the Lagow complaint and what Plaintiffs would have learned from any such investigation.

As this Court held in *Waldrup*, "[a]lthough plaintiffs must act diligently to invoke the discovery rule or the doctrine of fraudulent concealment, diligence does not mean investigating any and all potential wrongdoing."[48]  The duty to investigate arises only "where plaintiff is aware of facts which would make a reasonably prudent person suspicious."[49] As the California Supreme Court has explained, a "plaintiff is not barred because the means of discovery were available at an earlier date *provided* he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement" of the statute of limitations.[50]  Such facts to

---

[45] *Compare Waldrup,* ECF No. 14 at 6:21-8:17 *with* Mtn. to Dismiss at 9:17-11:15; *see also Waldrup,* ECF No. 22 at 7.

[46] *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594 (2014).

[47] *Id.* at 607.

[48] *Waldrup,* ECF No. 22 at 7.

[49] *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 438 (1945).

[50] *Id.* at 439.

make a reasonable person suspicious were not known, and could not have been known, until the Lagow complaint was unsealed.

In any event, as this Court has observed, "whether a plaintiff acted diligently is a question of fact."[51]  Thus, it is inappropriate for resolution at the motion to dismiss stage.[52]

## B.    Plaintiffs Adequately Allege Their Claims Under RICO, the FDUTPA, and the UCL

Defendants argue that the appraisals at issue contain a disclaimer purportedly communicating that the appraisals are intended to provide the lender with accurate, and adequately supported, opinions of the market value of the subject properties.[53] Despite the fact that Plaintiffs allege that the appraisals provide no such opinion, Defendants' purported disclaimer does not exculpate Defendants from facing allegations that the appraisals, which Plaintiffs paid substantial sums of money for, were fraudulent, improper and do not qualify as legitimate appraisals under relevant authorities.

Defendants' argument was previously presented to this Court and rejected based on virtually identical factual assertions made in the *Waldrup* complaint.  To the extent that Defendants are claiming that Plaintiffs did in fact receive the appraisals they were promised, this Court expressly rejected that argument in *Waldrup*.[54]  Similarly, here,

---

[51] *Waldrup,* ECF No. 22 at 8 (citing *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)).

[52] *Id.*

[53] Mtn. to Dismiss at 3:15-4:2.

[54] *See Waldrup,* ECF No. 22 at 12 (holding that "defendants argue that plaintiff paid for two appraisals and was given two appraisals, and thus received the benefit of her bargain.  This argument fails.  Plaintiff asserts not that she did not receive her paid-for appraisal, but instead that the appraisals she received were inflated, and thus worthless.  Taking these allegations as true, plaintiff did not receive the benefit of her bargain.").

Plaintiffs also allege that they did not receive the appraisals Defendants were obligated to provide.[55]

To the extent that Defendants are arguing that Plaintiffs simply lack the ability to justifiably rely on the appraisals because they were purportedly prepared for the benefit of the lender, Defendants also made (and lost) this argument.[56] In response to Defendants' motion to dismiss the *Waldrup* Second Amended Complaint, this Court held that *Waldrup* had not pled the fraud based claims with the required specificity, not based on whether or not she could justifiably rely on the reports, but based on the fact that Plaintiff had not adequately alleged the identity of personnel with whom she communicated.[57] Subsequently, after amending the complaint to allege the identity of personnel who communicated with the plaintiff in *Waldrup*, this Court rejected all pleading-based challenges to the Third Amended Complaint, thus finding that the reliance elements of *Waldrup*'s fraud based allegations were sufficiently pled.[58]

Defendants' next attempt to assert that under the legal requirement for causation and reliance, Plaintiffs' claims fail because, as borrowers, Plaintiffs are legally precluded from relying upon the appraisals. This argument is not supported by the law. Under the authority cited by Defendants, *Bridge v. Phoenix Bond & Indem. Co.*, first party reliance is not required to plead a RICO violation.[59] Instead, Plaintiffs only

---

[55] Compl. ¶ 10 (alleging that "given that the values provided by LandSafe's appraisals were not accurate assessments of a home's value, there was no reason for a prospective homeowner to pay for LandSafe's appraisals").

[56] *See Waldrup,* ECF No. 39 at 10:27-11:2.

[57] *See Waldrup,* ECF No. 45 at 8.

[58] *See Waldrup,* ECF No. 52 at 12 (holding that "Plaintiff correctly construes the intent of the Court's October 6, 2014 order, and the Court thus finds that she has adequately alleged fraud against all six defendants.").

[59] 553 U.S. 639, 658 (2008) ("*Phoenix Bond & Indem. Co.*").

need to show proximate cause.[60]  Of note, and relevant under the holding in *Phoenix Bond & Indem. Co.*, Plaintiffs allege that "[o]btaining an appraisal is a critical element of the home buying or refinancing process because it provides a buyer or homeowner with an accurate, objective and supportable opinion of a property's value; and it protects the financial and public policy interests in real estate transactions involving federally-regulated and federally insured institutions like Countrywide and BofA."[61]

In *Phoenix Bond & Indem. Co.*, the Court made it clear that "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations."[62]  Here, as identified above, Plaintiffs have alleged they relied upon Defendants' misrepresentations that an appraisal was being performed, even though the actual 'appraisals' that were performed were pre-textual reports "which were not legitimate opinions of the value of property."[63]  Plaintiffs were injured as a result of this conduct by paying for these sham "appraisals."[64]

Defendants' citation to *Anderson v. Franklin* also does not support their argument.[65]  In *Anderson*, the plaintiff alleged she was injured by the mortgage industry practice of creating a real estate bubble that artificially inflated home values, including her home.  Her alleged injury was that she was tricked into purchasing a

---

[60] *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 n.7 (N.D. Cal. 2009) ("[T]he Supreme Court has held that detrimental reliance by a plaintiff is not required to sustain a RICO claim predicated on mail fraud.").

[61] Compl. ¶ 4.

[62] 553 U.S. at 649.

[63] Compl. ¶¶ 1, 76, 88, 98.

[64] *Id*. ¶ 11 ("Countrywide and LandSafe falsely represented to borrowers that they had performed 'appraisals' on their properties which complied with the applicable legal and ethical USPAP standards and then required borrowers to pay between $300 and $600 for these so-called 'appraisals.'").

[65] 2010 WL 742765, at *9 (E.D. Mich. Feb. 26, 2010).

---

PLAINTIFFS' OPPOSITION TO          - 12 -
DEFENDANTS' MOTION TO DISMISS
010606-12 929408 v1

home for more than it was worth.[66]  Here, however, the injury alleged is simply the cost of a report claimed to be an appraisal, but which fails to meet the standards of a legitimate appraisal.

Next, Defendants cite to *Graham v. Bank of America, N.A.*; however this case actually supports Plaintiffs' contentions.[67]  Unlike *Graham*, Plaintiffs' claims do not turn on representations concerning the current or future value of Plaintiffs' properties or on representations concerning whether their loans were "good for [them]."[68]  In *Graham*, the California Court of Appeal expressly recognized the distinction present between the *Anderson* plaintiff, the *Graham* plaintiff and the Plaintiffs here when it held "[a]t best, the SAC alleges the market itself was inflated, not that the appraisal violated the law."[69]

Thus, the issue of whose "benefit" the appraisals were prepared for is entirely separate and distinct from the issue of why Plaintiffs ultimately paid for those appraisals.  Plaintiffs do not allege that they were injured because they relied on the inflated valuation present in the appraisal.  As identified above, under Defendants' theory they need only prepare a blank report titled "appraisal" with any dollar figure whatsoever and a disclaimer stating that report is for the use of the lender, then enjoy complete freedom to charge the borrower for such an appraisal.  This is not the law, and Defendants cite no authority for this proposition.

Defendants argue that "[a]s a matter of law, Plaintiffs can establish neither reliance nor causation because appraisals are for the benefit of the lender."[70]  However, Plaintiffs allege that they were injured because they were required to pay for

---

[66] *Id.* at *3.

[67] 226 Cal. App. 4th at 594.

[68] *See id.* at 599-600.

[69] *Id.* at 611.

[70] Mtn. to Dismiss at 14.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
010606-12 929408 v1

a pre-textual appraisal, not because they relied on the inflated valuation contained therein.[71]  Importantly, Defendants cite no authority for the proposition that their misrepresentations and omissions regarding their purported independence and objectivity cannot form the basis for Plaintiffs' reliance in paying for those inflated and manipulated appraisals.  Plaintiffs were sold an appraisal and received something else: something less.

## C.    Defendants' Argument That Plaintiffs' UCL Claims Should Be Dismissed Due to a Lack of Reliance Fails for the Same Reason their RICO Reliance Argument Fails

Defendants assert that Plaintiffs cannot maintain their UCL claim because as a matter of law, reliance cannot be alleged where the appraisal purports to be for the benefit of the lender, not the borrower.[72]  However, Defendants' argument rests on the same faulty logic as their previous reliance argument.  Plaintiffs allege Defendants' conduct was unlawful under Cal. Bus. & Prof. Code §17200 *et seq.* in that the conduct violates, among other laws, RICO, Cal. Civ. Code § 1090.5 as well as common law fraud and unjust enrichment.[73]  Plaintiffs further allege that Defendants engaged in unfair conduct as an alternative basis of liability under California unfair competition laws.[74]

Defendants' conduct resulted in Plaintiffs' and class members' direct loss of money and property in that they were charged for a purported appraisal, but received a report that did not constitute a proper appraisal and was not worth the value represented.[75]  Plaintiffs' claims are not based upon injuries suffered as a result of

---

[71] Compl. ¶¶ 76, 88, 98.

[72] Mtn. to Dismiss at 17.

[73] Compl. ¶ 176.

[74] *Id*. ¶ 177.

[75] *Id*. ¶ 178 ("Each of Defendants' omissions was material to Plaintiffs and members of the Class in ordering and paying for the fraudulent, manipulated and inflated 'appraisals' at issue.").

relying on the specific valuations in the appraisals.  Instead, Plaintiffs allege that "[h]ad the true nature of the fraudulent, manipulated and inflated appraisals been disclosed to Plaintiffs and Class Members, they would not have paid for the appraisals at issue."[76]  Plaintiffs allege that there is a direct nexus between Defendants' failure to provide a legitimate appraisal and the fee paid for that "appraisal."[77]  Defendants charged Plaintiffs for a purported appraisal while failing to provide such an appraisal, this resulted in direct injury in the amount of the appraisal fee paid by Plaintiffs and collected by Defendants.[78]

**D.    Defendants' Arguments that Plaintiffs' FDUTPA Claim Should Be Dismissed Due to a Lack of Reliance Fail for the Same Reason Their RICO and UCL Reliance Arguments Fail**

Plaintiffs have properly alleged each element of their FDUTPA claim. Defendants' Motion challenges the causation element of Plaintiffs' claim and whether Section 501.212(4)(c) excludes some Defendants from liability under the act.[79]

As it relates to the causation analysis, again, Defendants conflate the causation of Plaintiffs' claim as pled, with an invented claim not put forward by Plaintiffs here. Plaintiffs plainly allege that "[d]efendants engaged in a scheme to influence, coerce and manipulate the appraisal process and charge fees for appraisals that were never properly conducted."[80]  For the causation element, Plaintiffs do not plead that their injury resulted from their reliance on the inflated valuation of their appraisals, instead Plaintiffs pled that they:

> were injured as a result of Defendants' conduct in that Plaintiffs Reaster and Murphy and the other Florida Subclass members overpaid for their appraisals and did not receive the

---

[76] *Id.* ¶ 181.

[77] *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008).

[78] Compl. ¶ 181.

[79] Mtn. to Dismiss at 16-17.

[80] Compl. ¶ 188.

benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.[81]

As quoted by the first sentence of Defendants' Motion challenging the FDUTPA claims at Subsection IV(C), "[C]ausation is a necessary element of the FDUTPA claim, and 'causation must be direct, rather than remote or speculative.'"[82] In the *Lombardo* matter the court evaluated, at summary judgment, whether defendant's allegedly deceptive pricing practices caused the plaintiff to pay a higher price for sunscreen.  The Court first noted that "a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived."[83]  The Court then held that because defendant did not actually set the pricing but merely made a pricing suggestion to retailers, plaintiff's damages were not directly related to defendant's conduct.[84]  Here however, Plaintiffs paid the appraisal fee charged by Defendants directly.  Plaintiffs paid money to Defendants for an appraisal Defendants promised to perform, but which they never adequately performed.[85]

Finally, the exemption for banks and savings and loan associations from FDUTPA liability under Section 501.212(4)(c) is more narrow than Defendants assert in their Motion.  As the Eleventh Circuit stated, "Florida courts resolve questions about the applicability of this provision by looking to the *activity* which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of"

---

[81] *Id.* ¶ 192.

[82] *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (quoting *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012)).

[83] *Id*. (quoting *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011)); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

[84] *Id*.

[85] Compl. ¶ 192.

federal agencies.[86]  As a result, the banking defendants cannot automatically escape FDUTPA liability by virtue of their identity as banks.

The "FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[87]  The FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."[88]  In *Alhassid v. Bank of Am., N.A.*, the court denied a lender's motion to dismiss a FDUTPA claim where the lender "billed plaintiffs for *specific services* which were . . . never performed," including "property appraisals."[89]  The court continued that while services such as property appraisals were "appurtenant to" lending, "those activities can be construed as the separate offer or provision of services within the meaning of FDUTPA."[90]  Even further, whether an FDUTPA claim is barred against banks and savings and loan associations is a factual question inappropriate at the motion to dismiss phase.[91]

---

[86] *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd in part sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014) (citing *W.S. Badcock Corp. v. Myers,* 696 So.2 d 776, 782-83 (Fla. Dist. Ct. App. 1996)) (emphasis added) (holding that the focus on defendant's activity applies to Section 501.212(4) generally rather than any particular subpart).

[87] *See Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

[88] Fla. Stat. § 501.203(8).

[89] 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014).

[90] *Id.*

[91] *See, e.g.*, *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1238 (S.D. Fla. 2010) (holding that "it would be premature at the motion to dismiss stage to determine whether Defendants were acting as banks or brokers, and thus, would be exempted from application of the FDUTPA"); *see also Martorella v. Deutsche Bank Nat'l Trust Co.*, 161 F. Supp. 3d 1209, 1217 (S.D. Fla. 2015), *adhered to on reconsideration*, 2015 U.S. Dist. LEXIS 178137 (S.D. Fla. Nov. 9, 2015).

1    Here, Plaintiffs allege, in detail, how all Defendants engaged in and corrupted

2  the appraisal process.  Plaintiffs have alleged that Countrywide "controlled the process

3  and outcome of the so-called USPAP appraisal,"[92] "agreed [with LandSafe] to

4  knowingly, fraudulently, systematically and uniformly produce phony so-called

5  USPAP 'appraisals,'"[93] and "charged borrowers hundreds of millions of dollars for

6  legally-mandated USPAP appraisals that were never performed."[94]  "Because

7  Countrywide controlled the appraisal process through exclusive use of complicit

8  LandSafe employees, Countrywide was able to . . . direct appraisals to be performed

9  with indifference to the appraisals' accuracy."[95]  Thus, Countrywide's appraisal

10  activities are properly alleged to bring the Countrywide and Bank of America

11  defendants within the scope of the FDUPTA.

## V.    CONCLUSION

13    For the foregoing reasons, Plaintiffs respectfully request that this Court deny

14  Defendants' motion to dismiss.

16  Dated:  January 23, 2017              HAGENS BERMAN SOBOL SHAPIRO LLP

18                                        By */s/ Steve W. Berman*
19                                        Steve W. Berman (*pro hac vice*)
                                          Thomas E. Loeser (SBN 202724)
20                                        Hagens Berman Sobol Shapiro LLP
                                          1918 Eighth Avenue, Suite 3300
21                                        Seattle, WA 98101
                                          Telephone: (206) 623-7292
22                                        Facsimile: (206) 623-0594
                                          steve@hbsslaw.com
23                                        toml@hbsslaw.com

---

[92] *See* Compl. ¶ 7.

[93] *Id.* ¶ 8.

[94] *Id.* ¶ 11.

[95] *Id.* ¶ 64.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher Pitoun (SBN 290235)
Hagens Berman Sobol Shapiro LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Evan Zucker (SBN 266702)
Baron & Budd, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

*Attorneys for Plaintiffs and the Proposed Class*