UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Daniel Albertstone
Mark Pifko
Christopher Pitoun

Attorneys Present for Defendants:

Douglas Thompson

**Proceedings:** DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Dkt. 38, filed December 21, 2016)

## I. INTRODUCTION

On June 10, 2016, plaintiffs Elizabeth Williams, Rebecca Murphy, and Beckie Reaster ("plaintiffs") filed their class action complaint against defendants Countrywide Financial Corporation, Countrywide Home Loans, Countrywide Bank, N.A., Bank Of America Corporation, Landsafe Inc., and Landsafe Appraisal, Inc. ("defendants"). Dkt. 1 ("Compl."). Plaintiffs allege the following claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"); (2) conspiracy to engage in racketeering in violation of RICO; (3) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607("RESPA");[1] (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); (5) violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA"); and (6) unjust enrichment. See generally id. Plaintiffs seek to represent "[a]ll residents of the United States of America who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide." Id. ¶ 117. Plaintiffs also assert claims on behalf of California and Florida subclasses. Id.

---

[1] Pursuant to the plaintiffs and defendants' stipulation, on January 20, 2017, the Court dismissed the RESPA claim without prejudice. Dkts. 40, 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Also on June 10, 2016, plaintiffs filed a notice that their case (the "Williams Action") is related to *Waldrup v. Countrywide Financial Corp.*, No. 2:13-cv-08833-CAS-CW (the "Waldrup Action"). Dkt. 5. On June 16, 2016, this Court accepted a notice that the Williams Action is related to the Waldrup Action. Dkt. 9.

Barbara Waldrup filed her class action complaint against defendants on November 27, 2013. Waldrup Action dkt. 1. Following motions to dismiss and amendments, Waldrup filed her operative Third Amended Complaint on October 27, 2014. Waldrup Action dkt. 46 ("Waldrup TAC"). The Waldrup TAC alleges five claims for relief: (1) violation of California's UCL; (2) violation of RICO; (3) conspiracy to engage in racketeering in violation of RICO; (4) fraud; and (5) unjust enrichment. Id. Waldrup seeks to represent a nationwide class defined as "[a]ll residents of the United States of America who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide." Waldrup TAC ¶ 83.

On November 14, 2016, the Court consolidated the Williams and Waldrup Actions for pre-trial purposes. Dkt. 31.

On December 21, 2016, defendants filed a motion to dismiss plaintiffs' claims in the Williams Action, dkt. 38 ("MTD"), along with a request for judicial notice, dkt 39 ("RJN"). On January 23, 2017, plaintiffs filed their opposition to defendants' motion, dkt. 41 ("Opp'n"), along with an opposition to defendants' request for judicial notice, dkt. 42 ("RJN Opp'n"). On February 23, 2017, defendants filed their reply in support of their motion, dkt. 44 ("Reply"), and a response in support of their request for judicial notice, dkt. 45.[2]

---

[2] Defendants' request that the Court take judicial notice of three documents: (a) the July 12, 2007 appraisal of Williams' property; (b) the November 21, 2006 appraisal of Reaster's property; and (c) the July 25, 2007 appraisal of Murphy's property. See RJN. The appraisals comprise evidence upon which the complaint "necessarily relies." See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). The Court takes judicial notice of the appraisals because plaintiffs refer to the appraisals expressly in their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege the following facts.

In the context of a real estate loan transaction, an appraisal provides a borrower or homeowner with the means to obtain an opinion of value from a licensed and qualified specialist. Compl. ¶ 42. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") requires federally-insured financial institutions to obtain written appraisals that conform with the Uniform Standards of Professional Appraisal Practice ("USPAP") in connection with any real property insured by the Fair Housing Administration. Id. ¶ 44. Federal law requires that such appraisals are "performed in accordance with uniform standards, by individuals who have demonstrated competence and whose professional conduct is subject to effective supervision." Id. (quoting 12 U.S.C. § 1708(g)).[3] The USPAP standards, which are incorporated into federal law, see 12 C.F.R. § 34.44, impose a number of additional requirements on the performance of appraisals and the conduct of appraisers, including independence and impartiality. Compl. ¶¶ 44–49.

Countrywide Financial, and its subsidiaries Countrywide Home Loans and Countrywide Bank (collectively, "Countrywide"), originated mortgages through their retail operations, in which Countrywide Home Loans acted as the loan broker and

---

complaint; the appraisals, as sources of the alleged misrepresentations, are central to plaintiffs' claims; and plaintiffs do not appear to dispute the authenticity of the documents. However, plaintiffs contest the accuracy of *contents* of the appraisals. Therefore, the Court does not consider these documents for the truth of the matters asserted therein. See In re Bare Escentuals, Inc. Sec. Litig., 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."); Lee v. City of Los Angeles, 250 F.3d 668, 688–90 (9th Cir. 2001).

[3] Plaintiffs cite 12 U.S.C. § 1708(f), but appear to quote from and rely on 12 U.S.C. § 1708(g).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
|---|---|---|---|
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Countrywide Bank acted as the lender. Id. ¶ 52. As the real estate market grew during the early 2000s, Countrywide began loosening its underwriting efforts to rapidly close and sell loans to the secondary market. Id. ¶ 53. On July 1, 2008, Countrywide Financial and its subsidiaries merged with Bank of America, which became a successor-in-interest to the Countrywide businesses. Id. ¶ 24.

According to plaintiffs, "Countrywide viewed the appraisal process as a speed bump in the road to closing a loan." Id. In order to address the "'problem' of 'independent' appraisers impeding Countrywide's ability to rapidly originate and sell loans," Countrywide developed an affiliation with LandSafe, Inc. and its subsidiary LandSafe Appraisal (collectively, "LandSafe"). Id. ¶¶ 36, 54. Countrywide required borrowers to use LandSafe as its approved USPAP appraisal vendor. Id. ¶ 7. Through LandSafe, Countrywide allegedly: (1) used its market size to pressure appraisers to disregard the independent requirements for appraisals and to permit Countrywide to rapidly close a loan; (2) punished appraisers who refused to "play ball"; and (3) used fraudulent reviews to revise legitimate appraisals to arrive at values needed to close a loan. Id. ¶ 54.

On May 13, 2009, a whistleblower—Kyle Lagow—filed a sealed qui tam complaint against Countrywide, LandSafe, Bank of America, and others under the False Claims Act. Id. ¶ 56. Lagow's complaint was unsealed in May 2012. Id. According to Lagow's complaint, Lagow was employed by LandSafe from June 2004 to November 2008, first as as an "original supervisory home appraiser," and ultimately as an Assistant Vice President, Area Appraisal Manager. Id. ¶ 56. Lagow's complaint included allegations that, inter alia, defendants inflated property appraisals; refused to supply bona fide appraisers with materials necessary for appraisals; rewarded appraisers who produced corrupt appraisals and appraisal reviews; retaliated against appraisers who refused to corrupt their appraisal reports; and required appraisers to rely on information outside the relevant market to justify manipulated valuations. Id. ¶ 57. In addition to pressuring appraisers to "play ball," LandSafe also would review all appraisals for Countrywide loans to allow for the rewriting and inflating of any appraisal valuations that would prevent the associated loan from closing. Id. ¶ 58. Forcing buyers to use LandSafe as the appraiser was essential to this scheme. Id. ¶ 65. In late 2008, Lagow learned of an internal audit of LandSafe's appraisal practice which revealed that the LandSafe's appraisals were pretextual and "*always* communicated an inflated value necessary for Countrywide to close a loan." Id. ¶ 63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
|---|---|---|---|
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

On or about February 27, 2007, Williams—a citizen of California—applied for a loan from Countrywide-KB (a joint venture between KB Home and Countrywide Financial, and a predecessor-in-interest to defendant Bank of America, id. ¶¶ 24, 39–41). Id. ¶¶ 16, 66. Williams dealt primarily with Roxanne McDonald, a loan consultant from Countrywide-KB. Id. ¶ 66. Williams also communicated with McDonald's colleagues and/or staff who did not identify themselves by name.[4] Id. ¶ 66. On information and belief, plaintiffs allege that Countrywide authorized McDonald's colleagues to provide Williams with loan-related documents—including appraisals—that contained misrepresentations and omissions. Id. ¶ 66. These documents represented to Williams that the lender "may require *you* to use the services of an affiliated . . . real estate appraiser, *as a condition of your loan on this property*, to represent the Lender's interest in the transaction. Id. ¶ 68. The Good Faith Estimate that McDonald provided to Williams stated that Williams would be required to use LandSafe Appraisal Services, Inc. Id. Williams was informed that she would be charged $200 to $450 for the appraisal. Id. ¶ 69. Plaintiffs allege that defendants materially omitted and failed to disclose why Williams was required to use LandSafe's services. Id. ¶ 70. Defendants did not disclose that Countrywide was "indifferent to the appraisal's accuracy and instead, the purpose was to create pre-textual appraisals in order to streamline Defendants' mortgage business[.]" Id.

On or about March 2, 2007, McDonald or her colleagues provided Williams with loan-related documents representing that Williams would incur the sum of $450 for the appraisal performed by LandSafe. Id. ¶ 71.

On information and belief, plaintiffs allege that, between March and August 2007, LandSafe, through its agents prepared a document for Williams entitled "Uniform Residential Appraisal Report" (the "Williams Appraisal"), which falsely represented that it had been prepared "in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP) as approved by the Appraisal Standards Board of the

---

[4] In addition to communications with McDonald, on or about March 21, 2007, Williams emailed with KB Homes sales representative Duc Hoang, regarding McDonald's failure to properly process Williams' loan application. Compl. ¶ 72. Between March and August of 2007, Williams communicated with Countrywide officers Cynthia Luongo and James Hecht, among others, to repair errors in Williams' loan file. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Appraisal Foundation; the requirements to Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA); the Uniform Standards of Professional Appraisal Practice and the Code of Professional Ethics of the Appraisal Institute; all applicable state licensing and certification requirements; and all applicable Supplemental Standards." Id. ¶ 73. On information and belief, plaintiffs allege that LandSafe sent the Williams Appraisal from its offices in Texas, via an interstate carrier, to Countrywide offices in California. Id. ¶ 74. LandSafe never sent Williams Appraisal directly to Williams. Id.

In furtherance of defendants' alleged scheme to unlawfully charge homeowners for appraisals generated without regard for accuracy, plaintiffs allege that none of defendants, Countrywide Ventures, Countrywide-KB, or their agents disclosed to Williams that her appraisal was not prepared according the USPAP standards or regulations and laws governing appraisals and, therefore, was illegitimate and in violation of federal and state law. Id. ¶ 75. Williams ultimately paid an appraisal fee of $515 in reliance on defendants' misrepresentations. Id. ¶ 76. Plaintiffs allege that Williams would not have paid LandSafe $515 to perform the appraisal had she known that Countrywide was indifferent to the appraisal's accuracy or that the appraisal was pretextual rather than prepared according to USPAP standards, regulations, and laws governing appraisals. Id. On information and belief, plaintiffs allege that Countrywide and LandSafe shared some portion of the $515 fee. Id. ¶ 77.

On or about June 2, 2006, Reaster—a citizen of Florida—applied for a loan with Countrywide-KB in connection with the purchase of a new home in Florida. Id. ¶¶ 17, 78. Reaster dealt primarily with Blair Hogue, a home loan counselor, along with Hogue's colleagues and/or staff who did not identify themselves by name. Id. ¶ 78. On information and belief, plaintiffs allege that Countrywide authorized Hogue's colleagues to provide Reaster with loan-related documents—including appraisals—that contained misrepresentations and omissions. Id. Specifically, Hogue—on behalf of Countrywide-KB and Countrywide Ventures (a subsidiary of Countrywide Financial)—provided Reaster with certain documents that represented to Reaster that the lender "may require *you* to use the services of an affiliated . . . real estate appraiser, *as a condition of your loan on this property*, to represent the Lender's interest in the transaction. Id. ¶ 80. The Good Faith Estimate that Hogue provided to Reaster stated that Reaster would be required to use LandSafe Appraisal Services, Inc. Id. Reaster was informed that she would be charged $200 to $450 for the appraisal. Id. ¶ 81. Plaintiffs allege that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

defendants materially omitted and failed to disclose why Reaster was required to use LandSafe's services. Id. ¶ 82. Defendants did not disclose that Countrywide was "indifferent to the appraisal's accuracy and instead, the purpose was to create pre-textual appraisals in order to streamline Defendants' mortgage business[.]" Id.

On or about June 5, 2006, Hogue or his colleagues provided Reaster with loan-related documents representing that Reaster would incur the sum of $350 for the appraisal performed by LandSafe. Id. ¶ 83.

On or about June 16, 2006, Reaster received notice from Countrywide Ventures and Countrywide-KB that she had been approved for a home purchase loan, subject to a series of conditions. Id. ¶ 84. The conditions included a requirement that Reaster attain a "Satisfactory Property Appraisal supporting sales price" and a "Satisfactory Desk Review of appraisal." Id.

On or about November 21, 2006, Landsafe and its agent Steven M. Miller of A+ Appraisal Services, LLC, prepared a document for Reaster entitled "Uniform Residential Appraisal Report" (the "Reaster Appraisal") on Reaster's property. Id. ¶ 85. Reaster's appraisal falsely represented that it had been prepared "in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP) as approved by the Appraisal Standards Board of the Appraisal Foundation; the requirements to Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA); the Uniform Standards of Professional Appraisal Practice and the Code of Professional Ethics of the Appraisal Institute; all applicable state licensing and certification requirements; and all applicable Supplemental Standards." Id. On information and belief, plaintiffs allege that LandSafe authorized Miller and A+ Appraisal Services to make the representations and omissions contained in Reaster's appraisal. Id. Plaintiffs allege that LandSafe sent the Reaster Appraisal via an interstate carrier from its offices in Texas to Countrywide Ventures and Countrywide-KB, which then sent the appraisal, via an interstate carrier, to Reaster. Id. ¶ 86. Landsafe also sent the appraisal via an interstate carrier directly to Reaster. Id.

In furtherance of defendants' alleged scheme to unlawfully charge homeowners for appraisals generated without regard for accuracy, plaintiffs allege that none of defendants, Countrywide Ventures, Countrywide-KB, or their agents disclosed to Reaster that her appraisal was not prepared according the USPAP standards or regulations and laws governing appraisals and, therefore, was illegitimate and in violation of federal and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

state law. Id. ¶ 87. Reaster ultimately paid an appraisal fee of $400 in reliance on defendants' misrepresentations. Id. ¶ 88. Plaintiffs allege that Reaster would not have paid LandSafe $400 to perform the appraisal had she known that Countrywide was indifferent to the appraisal's accuracy or that the appraisal was pretextual rather than prepared according to USPAP standards, regulations, and laws governing appraisals. Id. On information and belief, plaintiffs allege that Countrywide and LandSafe shared some portion of the $400 fee. Id. ¶ 89.

On or about December 2006, Murphy—a citizen of Florida—applied for a loan with Countrywide Ventures and Countrywide-KB in connection with the purchase of a new home in Florida. Id. ¶¶ 18, 90. Murphy dealt primarily with the Countrywide KB Home Loans location in Maitland, Florida (the "Maitland Countrywide KB office"). Id. ¶ 90. Murphy also received communications from Felix Santana and other staff who did not identify themselves by name. Id. On information and belief, plaintiffs allege that Countrywide authorized the Maitland Countrywide KB office to provide Murphy with loan-related documents—including appraisals—that contained misrepresentations and omissions. Id. In early 2007, Murphy received certain loan-related documents from Countrywide-KB and Countrywide Ventures that represented to Murphy that the lender "may require *you* to use the services of an affiliated . . . real estate appraiser, *as a condition of your loan on this property*, to represent the Lender's interest in the transaction. Id. ¶ 92. The Good Faith Estimate that Murphy received stated that she would be required to use LandSafe Appraisal Services, Inc. Id. Murphy was informed that she would be charged $200 to $450 for the appraisal. Id. ¶ 93. Plaintiffs allege that defendants materially omitted and failed to disclose why Murphy was required to use LandSafe's services. Id. ¶ 94. Defendants did not disclose that Countrywide was "indifferent to the appraisal's accuracy and, instead the purpose was to create pre-textual appraisals in order to streamline Defendants' mortgage business[.]" Id.

On or about July 25, 2007, Landsafe and its agent Paul A. Rioux of Halifax Appraisal Company, prepared a document for Murphy entitled "Uniform Residential Appraisal Report" (the "Murphy Appraisal") on Murphy's property. Id. ¶ 95. Murphy's appraisal falsely represented that it had been prepared "in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of the Appraisal Foundation." Id. On information and belief, plaintiffs allege that LandSafe authorized Rioux to make the representations and omissions contained in Murphy's appraisal. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Plaintiffs allege that LandSafe sent the Murphy Appraisal via an interstate carrier from its offices in Texas to Countrywide Ventures and Countrywide-KB, which then sent the appraisal via an interstate carrier to Murphy. Id. ¶ 96. Plaintiffs assert that LandSafe also sent the appraisal via an interstate carrier directly to Murphy. Id.

On or about September 11, 2007, Countrywide Home Loans represented to plaintiffs that LandSafe had performed a Uniform Residential Appraisal Report to Murphy's home and represented to Murphy that she would be charged $410 for her appraisal. Id. ¶ 97. Plaintiffs allege that Murphy would not have paid LandSafe $410 to perform the appraisal had she known that Countrywide was indifferent to the appraisal's accuracy or that the appraisal was pretextual rather than prepared according to USPAP standards, regulations, and laws governing appraisals. Id. ¶ 98. On information and belief, plaintiffs allege that Countrywide and LandSafe shared some portion of the $410 fee. Id. ¶ 102.

On or about September 17, 2007, Murphy executed a Note with Country-KB Home Loans for a loan. Id. ¶ 99.

Defendants, Countrywide Ventures, Countrywide-KB, and their agents did not disclose to Murphy that Countrywide was indifferent to the Murphy Appraisal's accuracy, or that the Murphy Appraisal was not prepared according to uniform standards or regulations and laws governing appraisals and was not an independent and objective valuation of the property and, therefore, was illegitimate and in violation of federal and state law. Id. ¶ 100.

Accordingly, plaintiffs allege that the Williams, Reaster, and Murphy Appraisals were illegitimate, unsupported, and violated federal and state law because they were conducted pursuant to a uniform practice of unlawful conduct with respect to the preparation of appraisals for Countrywide from 2004 to 2008. Id. ¶ 103. Plaintiffs assert that their appraisal reports were not appraisals at all because they did not contain legitimate opinions of the values of plaintiffs' property. Id. ¶ 104.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Fed. Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

**B.    Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. CibaGeigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. at 1103. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Rule] 9(b)." Id. at 1103–04. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV. DISCUSSION

### A. Statutes of Limitations

Defendants argue that plaintiffs' claims are barred by the applicable three- and four-year statutes of limitations because plaintiffs' claims arise from transactions that took place in 2006 and 2007. MTD at 8; see Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001) ("The statute of limitations for civil RICO actions is four years."); Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued."); FDIC v. Dintino, 167 Cal. App. 4th 333, 348 (2008) (three-year statute of limitations for unjust enrichment); Blair v. Wachovia Mortg. Corp., No. 5:11-cv-566-OC-TBS, 2012 WL 868878, at *2 (M.D. Fla. Mar. 14, 2012) ("Under Florida law, actions 'other than for recovery of real property shall be commenced . . . [w]ithin four years [if] [a]n action [is] founded on a statutory liability.'" (quoting Fla. Stat. Ann. § 95.11(3)(f))).

First, plaintiffs argue that under the "discovery rule," the various statutes of limitations did not begin to run until plaintiffs discovered the alleged fraud at issue in this case. Opp'n at 5–6. Under California law, "the discovery rule 'permits delayed accrual [of a cause of action] until a plaintiff knew or should have known of the wrongful conduct at issue.'" El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir. 2003) (quoting April Enter., Inc. v. KTTV and Metromedia, Inc., 147 Cal. App. 3d 805, 832 (1983)). Additionally, "[t]he discovery rule has been observed as a matter of federal law." Bibeau v. Pac. Nw. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999) (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)). As relevant here, plaintiffs allege that they first became aware that their appraisals were fraudulent on May 13, 2012, when the Lagow complaint alleging misconduct by LandSafe was first unsealed. Compl. ¶¶ 111, 113. Plaintiffs therefore argue that the statutes of limitations should run from May 13, 2012 – the date on which the Lagow complaint was unsealed.

Second, plaintiffs argue that the statutes of limitations should be tolled under the doctrine of fraudulent concealment. Opp'n at 6–8. "Equitable estoppel, also termed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

fraudulent concealment, halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (quotation marks omitted). Here, plaintiffs contend that defendants "concealed their fraudulent appraisal scheme." Compl. ¶¶ 25, 87, 100; see also id. ¶ 107. As a result, plaintiffs were "unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part." Id. ¶ 113. Plaintiffs therefore contend that defendants' efforts to conceal their fraudulent appraisal scheme should toll the statutes of limitations.

Defendants argue that plaintiffs have not pled facts showing their diligence in the period between when they first received their appraisals and the unsealing of the Lagow complaint in May 2012.[5] MTD at 9–11. Under both the discovery rule and the doctrine of fraudulent concealment, a plaintiff seeking to avoid the statute of limitations must plead with particularity facts showing the plaintiff's "inability to have made earlier discovery despite reasonable diligence." Camsi IV v. Hunter Tech. Corp., 230 Cal. App. 3d 1525, 1536–37 (1991). See, e.g., Baker v. Beech Aircraft Corp., 39 Cal. App. 3d 315, 321 (1974) ("In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of the fact sufficient to put him on inquiry."); Anderson v. Brouwer, 99 Cal. App. 3d 176, 182 (1979) ("Formal averments or general conclusions to the effect the facts were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless . . . . The complaint must set forth specifically (1) the facts of the time and manner of the discovery; and (2) the circumstances which excuse the failure to have made an earlier discovery."). Defendants contend that plaintiffs have not pled facts showing that they exhibited any diligence at all in investigating these claims prior to the unsealing of the whistleblower complaint in May 2012. MTD at 11.

As plaintiffs note, defendants made—and the Court rejected—substantially the same arguments in their motion to dismiss Waldrup's original complaint. See dkt. 22 at

---

[5] Defendants focus on the doctrine of fraudulent concealment and do not separately address the discovery rule. Because both doctrines require the plaintiff to have acted diligently, the Court addresses plaintiffs' two arguments collectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

5–8. The Court finds that the same reasoning applies to defendants' argument with respect to the plaintiffs' claims here. Although plaintiffs must act diligently to invoke the discovery rule or the doctrine of fraudulent concealment, diligence does not mean investigating any and all potential wrongdoing. A "plaintiff is not barred because the means of discovery were available at an earlier date provided he has shown that he was not put on inquiry by [the] circumstances." Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 439, 159 P.2d 958 (1945). Here, plaintiffs have alleged that they were not placed on inquiry notice of the alleged fraud until the unsealing of the Lagow complaint in May 2012. This allegation may or may not be true—perhaps plaintiffs knew enough prior to May 2012 that due diligence would require further investigation of her appraisals. However, the Court notes that defendants have not argued, or offered evidence to support an argument, that plaintiffs were "aware of facts which would make a reasonably prudent person suspicious." Hobart, 26 Cal. 2d at 438. Because the question of whether plaintiffs knew or should have become aware of the alleged fraud is a fact-intensive inquiry and because plaintiffs *have* alleged that they were not put in inquiry notice until May 2012, the Court declines to find at this stage that plaintiffs cannot avail themselves of either the discovery rule or the doctrine of fraudulent concealment.

However, even applying the discovery rule or the fraudulent concealment doctrine, plaintiffs filed this action more than four years after the unsealing of the Lagow complaint. Therefore, the applicable three- and four-year limitations periods bar plaintiffs' claims unless the statutes of limitations were otherwise tolled.

Plaintiffs argue that the filing of the complaint in the Waldrup Action, on November 27, 2013, tolled the statute of limitations as to plaintiffs' claims, pursuant to American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). Opp'n at 8. In American Pipe, the Supreme Court held that a statute of limitations is tolled for the period that a putative class action is pending as to "all those who might subsequently participate in the suit as well as for the named plaintiffs." American Pipe, 414 U.S. at 550–51. American Pipe tolling applies to all members of the purported class, not just potential intervenors. Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 350 (1983).

Because plaintiffs are putative class members in the Waldrup Action, the Court finds that American Pipe tolls the statute of limitations on plaintiffs' federal claims (i.e., plaintiffs' RICO claims) beginning on November 27, 2013 – the date the Waldrup Action was filed. See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Corp., 878 F. Supp. 2d 1009, 1014–15 (C.D. Cal. 2011) ("The rule of American Pipe . . . applies within the federal court system in federal question class actions only and protects a plaintiff who has relied on the filing of a prior class action to vindicate the right in question."). However, American Pipe tolling does not apply to plaintiffs' state law claims:

> Federal courts addressing state law claims must apply state law statutes of limitation and state law applies to the question of tolling state claims. Therefore, a federal court faced with the question of whether a state law claim is barred by its statute of limitations must apply the substantive law of the state and be governed by how the highest court of that state would resolve the limitations and tolling questions before it.

Id. at 1015.

The Court therefore considers whether California courts would apply American Pipe tolling. The Court is persuaded by the reasoning in Centaur Classic, which concluded that California courts would not apply American Pipe tolling in circumstances such as these "[b]ecause California does not recognize cross-jurisdictional tolling." Id. at 1017. In other words, California does not recognize American Pipe tolling in cases where a plaintiff pursues claims afforded by the law of one jurisdiction (i.e., California state court), in the courts of another jurisdiction (i.e., federal district court). Id. at 1015–17.

Absent the application of American Pipe tolling, the Court considers whether there is another basis on which California courts would toll the statute of limitations as to plaintiffs' UCL and unjust enrichment claims. The Ninth Circuit, interpreting California law, has concluded that California law permits equitable tolling "where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." Hatfield v. Halifax PLC, 564 F.3d 1177, 1188–89 (9th Cir. 2009) (quotation marks omitted). That is, California law "would clearly permit equitable tolling at least as to any class members who individually subsequently filed a similar claim." Id. at 1189. However, "[w]here plaintiffs pursue successive claims in the same forum, the California Court of Appeal has squarely held that equitable tolling does not apply." Centaur Classic, 878 F. Supp. 2d at 1018; see also Naylor v. Flavan, No. 08-cv-03746-GAF-AJW, 2009 WL 1468708, at *6 (C.D. Cal. May 19, 2009) ("It appears that plaintiff is not entitled to equitable tolling under California law because Rainwater and

Case 2:16-cv-04166-CAS-AGR Document 47 Filed 03/13/17 Page 16 of 19 Page ID #:333

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

this case were both filed in this court, that is, in the same forum."); Barrier v. Benninger, No. 98-cv-0650-CAL, 1998 WL 846599, at *9 (N.D. Cal. Dec. 1, 1998) ("The cases interpreting California's doctrine of equitable estoppel all share one significant element—the plaintiff is attempting to bring a subsequent action in a different forum."); Martell v. Antelope Valley Hosp. Med. Ctr., 67 Cal. App. 4th 978, 985 (1998) ("Finally, appellants contend equitable tolling excuses them from complying with section 945.6 a second time. Under equitable tolling, the statute of limitations in one forum is tolled as a claim is being pursued in another forum. Here, however, appellants pursued successive claims in the same forum, and therefore equitable tolling did not apply." (citations omitted)). "Accordingly, California's equitable tolling doctrine does not apply in this case because this case and [the Waldrup Action] were filed in the same forum: this Court." See Centaur Classic, 878 F. Supp. 2d at 1018. Because plaintiffs may not rely on American Pipe tolling or equitable tolling under California law, the Court finds that plaintiffs' UCL and unjust enrichment claims are time-barred by the applicable three- and four-year statutes of limitations.

The Court next considers whether, under Florida law, the filing of the Waldrup Action tolled the statute of limitations as to plaintiffs FDUTPA claim. Courts interpreting Florida law appear to disagree as to whether the Waldrup Action would serve to equitably toll the statute of limitations for plaintiffs' FDUTPA claim. On one hand, the Eleventh Circuit has stated that "American Pipe has been followed in Florida state courts." Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 (11th Cir. 2003). On the other, Florida law "provides an exclusive list of Floridian tolling doctrines, and class-action American Pipe tolling is not on it." In re Cathode Ray Tube (CRT) Antitrust Litig., 27 F. Supp. 3d 1015, 1025 (N.D. Cal. 2014); Florida Dep't of Health & Rehab. Servs. v. S.A.P, 835 So. 2d 1091, 1096 n.7 (Fla. 2002) ("Section 95.051 sets forth an exclusive list of conditions that can 'toll' the running of the statute of limitations; the section states that no other condition can toll the statute of limitations."); Fla. Stat. Ann. § 95.051. Because the Florida Supreme Court appears to have foreclosed tolling doctrines not enumerated in Section 95.051, the Court finds that the filing of the Waldrup Action did not toll the limitations period of plaintiffs' FDUTPA claim. The Court therefore concludes that plaintiffs' FDUTPA claim is time-barred by the applicable four-year statute of limitations.

Notwithstanding the reasoning articulated above (and in the Court's prior order in the Waldrup Action), defendants argue that tolling the statutes of limitations would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

inequitable because plaintiffs waited to file suit until more than four years after the Lagow complaint was unsealed and more than two years after the Waldrup Action was filed. Id. at 13; Reply at 3–4. Defendants contend that they are prejudiced for having to defend transactions that are ten years old and involve entities (KB Home, Countrywide Mortgage Ventures, and Countrywide-KB) that were not within the scope of the Waldrup Action. Reply at 4. Defendants thus assert that "[i]t is inequitable to allow Plaintiffs to circumvent the statutes of limitations; the bar of laches should be applied to prevent litigation of stale claims concerning non-parties not previously mentioned in the prior, related Waldrup action." Id. at 5. The Court disagrees. Where defendants' allegedly fraudulent scheme and their efforts to conceal it are largely responsible for the delay at issue, the Court finds it would be more inequitable to preclude plaintiffs from bringing their claims as a result of this delay than to require defendants to defend against such claims.

Accordingly, the Court **GRANTS** defendants motion to dismiss plaintiffs' UCL, unjust enrichment, and FDUTPA claims and **DISMISSES** the claims **without prejudice**. The Court otherwise **DENIES** defendants' motion to dismiss plaintiffs' RICO claims.

  **B.** **Plaintiffs' Claims for Violation of RICO**

Plaintiffs allege RICO violations pursuant to 18 U.S.C. §§ 1962(c) and (d). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" The essential elements of a claim premised upon a violation of Section 1962(c) are thus: (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010). Racketeering activity is defined to include a number of predicate acts, including mail and wire fraud. 18 U.S.C. § 1961(1). Mail fraud, in turn, requires proof that a defendant: (1) formed a scheme to defraud, (2) used the mails in furtherance of that scheme, and (3) "did so with the specific intent to deceive or defraud." Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004). "[T]o maintain a civil RICO claim predicated on mail fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury." Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004).

Defendants argue that plaintiffs fail to allege the reliance and causation elements of their RICO claims. MTD at 13. First, contrary to defendants' suggestion, a RICO

Case 2:16-cv-04166-CAS-AGR Document 47 Filed 03/13/17 Page 18 of 19 Page ID #:335

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

plaintiff need not prove reliance on a defendant's misrepresentations to establish proximate cause. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 659 (2008) ("[T]he fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action. Nor does it transform first-party reliance into an indispensable requisite of proximate causation. Proof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary." (citation and quotation marks omitted)); see also In re Actimmune Mktg. Litig., 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) ("[T]he Supreme Court has held that detrimental reliance by a plaintiff is not required to sustain a RICO claim predicated on mail fraud.") aff'd, 464 F. App'x 651 (9th Cir. 2011). Second, defendants appear to concede in their reply that "[e]ach Plaintiff alleges she relied on misrepresentations in paying the appraisal fee." Reply at 7. Defendants also argue that plaintiffs cannot establish causation because an appraisal is done for the benefit of the lender, not the borrower. MTD at 14–16. The Court finds this argument unpersuasive. That the appraisals were conducted for the benefit of the lender does not mean that defendants' alleged conduct did not cause injury to plaintiffs. Plaintiffs allege that their injuries arose because they paid for appraisals conducted in accordance with USPAP standards, along with other state and federal laws, but instead received sham appraisals that did not comply with such standards and laws. As the Court concluded in the Waldrup Action, plaintiffs allege that they were injured because they "did not receive the benefit of [their] bargain[s]." See dkt. 22 at 12. The Court similarly finds that plaintiffs adequately allege that defendants proximately caused their injuries by pleading that defendants charged plaintiffs for a service that was not provided. That Williams did not receive the allegedly fraudulent appraisal report, see Compl. ¶ 140, is of no moment. Williams—like Reaster and Murphy—alleges that she paid for an appraisal because defendants represented that (1) a proper appraisal would be completed and (2) Williams was required to pay for it; instead, only a pre-textual "sham" appraisal was conducted. Therefore, Williams too did not receive the benefit of her bargain.

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' RICO claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-04166-CAS(AGRx) | Date | March 13, 2017 |
| Title | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to dismiss plaintiffs' RICO claims and **GRANTS without prejudice** defendants' motion to dismiss plaintiffs' UCL, unjust enrichment, and FDUTPA claims.

Plaintiffs shall have **fourteen (14) days** from the date of this order to file an amended complaint addressing the deficiencies identified herein.

IT IS SO ORDERED.

                                                             00 : 34
                                     Initials of Preparer     CMJ